**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Kasper, | No. CV-19-05810-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Kevin Kasper's Application for Disability Insurance benefits by the Social Security Administration (SSA) under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. This Court reverses and remands the Administrative Law Judge's ("ALJ") decision (Doc. 11-3 at 11–33) as upheld by the Appeals Council (*Id.* at 2–6).

**I.     BACKGROUND**

Plaintiff is a former professional football player. He alleges disability beginning on August 1, 2008 ("disability onset date"). (*Id*. at 14.) His claim was denied initially on July 20, 2016, and upon reconsideration on March 25, 2016. (*Id*.) On June 29, 2018, he was granted a hearing. (*Id*.) On December 11, 2018, the ALJ denied Plaintiff's Application, and on October 17, 2019, the Appeals Council denied Plaintiff's Request for Review. (*Id*. at 1.)

The ALJ evaluated Plaintiff's disability based on the following severe impairments: AC joint restriction, degenerative joint disease of the ankle, knee impairment, lumbar disc

protrusion, cervical fracture, degenerative disc disease, and post-concussive syndrome. (*Id*. at 17.) Ultimately, the ALJ concluded that Plaintiff was not disabled from the disability onset date through December 31, 2015—Plaintiff's date-last-insured ("DLI"). (*Id*. at 27.) The ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id*. at 17.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except he was limited to frequent climbing ramps and stairs, but never ladders[,] ropes[, or] scaffolds. He could have frequently balanced, stooped, kneeled, crouched, and crawled. The claimant was to avoid working around hazards such as moving machinery and unprotected heights. In addition, he was limited to simple, routine, and repetitive work tasks involving simple work related decisions and simple instructions."

(*Id*. at 19.) Accordingly, the ALJ found that Plaintiff could not perform his past work as a professional athlete but could make a successful transition to other work that existed in significant numbers in the national economy. (*Id*. at 25-27.)

## II.     LEGAL STANDARDS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises two arguments on appeal. First, Plaintiff argues that his ALJ was unconstitutionally appointed. (Doc. 12 at 4–8.) Accordingly, Plaintiff requests a new hearing before a constitutionally appointed ALJ. *(Id.* at 5.) Second, Plaintiff challenges the ALJ's evaluation of the medical opinions concerning Plaintiff's cognitive and psychological limitations. (*Id*. at 8–20.) As the ALJ incorrectly evaluated several medical opinions in this case those errors require remand.

**A. The ALJ erroneously rejected the opinions of four examining physicians who opined to significant cognitive limitations.**

Since the end of his professional football career Plaintiff has had several neurological evaluations. On February 18, 2009, (1) Dr. Matthew Meriggioli provided Plaintiff a neurological consultation "to evaluate his impairment secondary to numerous

concussions suffered while playing NFL football." (Doc. 11-10 at 852-860; Doc. 11-17 at 1907–08) On August 26, 2016, (2) Dr. Lorne Label conducted a neurological evaluation of Plaintiff and found that Plaintiff meets the criteria for moderate dementia. (Doc. 11-18 at 1993–99.) The next day, (3) Dr. Serina Hoover, Psy.D., performed a comprehensive neuropsychological evaluation of Plaintiff, which consisted of several tests over several hours. (*Id*. at 2009–25.) On December 13, 2016, Plaintiff underwent another neuropsychological examination by (4) Dr. Nick Wisdom, Ph.D. (Doc. 11-19 at 2184–90.) Plaintiff next treated with (5) Dr. Jared Dinehart, Ph.D., on December 20, 2016, for psychological and cognitive issues. (*Id*. at 2096.) Finally, on December 13, 2017, Plaintiff received a neurological evaluation by (6) Dr. Randolph Evans. (*Id*. at 2182–83.)

The ALJ rejected all of these opinions. The ALJ rejected the opinions of Drs. Label and Hoover because they were given after Plaintiff's DLI, "and there is no reason to believe the restrictions related back prior to December 31, 2015." (Doc. 11-3 at 24.) The ALJ also rejected Dr. Wisdom's opinion for the same reason, but also rejected his opinion because Plaintiff over-endorsed symptoms during one of the tests administered. (*Id*.) The ALJ did not mention Dr. Evan's opinion. Instead, the ALJ gave great weight to the opinions of State-agency-reviewers.[1] (*Id.* at 25.) Although the ALJ correctly rejected the opinions of Dr. Meriggioli and Dinehart, she erred in the process of evaluating the rest.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(c) and determine the

---

[1] Defendant argues that Plaintiff does not dispute the ALJ's weighing of the State-agency-reviewer's opinions. (Doc. 14 at 12.) Yet, Plaintiff disputes the ALJ's rejection of several opinions (Dr. Meriggioli, Dr. Label, Dr. Evans, Dr. Hoover, and Dr. Wisdom) in favor of others (the State-agency-reviewers). (Doc. 12 at 20.)

- 4 -

appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If a treating physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion unless he provides specific and legitimate reasons that are based on substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Similarly, "[t]he opinion of an examining physician is . . . [generally] entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Doc. 11-10 at 830–31.

### 1. The ALJ correctly rejected the opinions of Drs. Meriggioli and Dinehart.

The ALJ correctly rejected Dr. Meriggioli's opinion because it was conclusory, overly reliant on Plaintiff's self-reports, and opined as to an ultimate issue--whether Plaintiff is disabled--that is reserved to the ALJ. (Doc. 11-3 at 24.) Dr. Meriggioli's opinion is brief and lacks explanation regarding why Plaintiff is totally disabled. (Doc.11-10 at 852–60.) This insufficiency is further compounded by the lack of a treatment relationship or corroborating medical records supporting Dr. Meriggioli's conclusions. *See Bayliss*, 427 F.3d at 1216 (reiterating that the ALJ need not accept a doctor's opinion that is brief, conclusory, and inadequately supported by clinical findings). Additionally, the ALJ correctly rejected the aspects of Dr. Meriggioli's opinion on issues that are reserved to the ALJ, including the ultimate issue of whether Plaintiff is disabled. See 20 C.F.R. § 404.1527(d). Finally, the ALJ correctly rejected Dr. Meriggioli's opinion because it was based largely on Plaintiff's self-reports, which the ALJ rejected and Plaintiff has not challenged. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.").

The ALJ also correctly rejected Dr. Dinehart's statement. Dr. Dinehart did not clearly offer any opinion regarding Plaintiff's functional limitations; instead, his statement

simply relays his treatment relationship with Plaintiff. (Doc. 11-19 at 2096.) Even if Dr. Dinehart's statement could be considered an opinion, the ALJ correctly rejected it because Dr. Dinehart specified that his treatment began after Plaintiff's DLI, and his opinion does not appear in any way to relate back to the relevant period.

> **2.  The ALJ failed to offer specific and legitimate reasons supported by substantial evidence for rejecting the opinions of Drs. Label, Hoover, Wisdom, and Evans.**

The sole reason the ALJ rejected the opinions of Drs. Label and Hoover was that they were offered after Plaintiff's DLI and apparently did not relate back to the relevant period. (Doc. 11-3 at 24.) The ALJ provided the same justification for rejecting Dr. Wisdom's opinion but also rejected it because Plaintiff over-endorsed symptoms on one of several administered tests, "which also renders the opinion less reliable." *Id*. The ALJ did not discuss Dr. Evans's opinion despite the requirement that an ALJ consider all of the medical opinion evidence. *Tommasetti*, 533 F.3d at 1041.

Though the timing of an opinion in relation to the DLI is a permissible consideration, an ALJ cannot reject an opinion outright solely because it was rendered after the DLI. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). However, in reaching his opinion, Dr. Label reviewed medical history and records from the relevant period, ruled out possible contemporaneous causes of Plaintiff's impairments from within the relevant period, and found that there was existing cognitive decline compared to Plaintiff's historic levels of performance during and predating the relevant period. (Doc. 11-18 at 1993–2000.) All of these findings relate to the relevant period. Similarly, Dr. Hoover found that Plaintiff's limitations are likely permanent based on her finding that they have *already existed for several years* (including the relevant period). (*Id*. at 2020.) Finally, Dr. Wisdom, like Drs. Label and Hoover, reviewed medical records and history from the relevant period and opined to impairments that are continuations of issues from that time. (Doc. 11-19 at 2184–90.) Because the opinions of Drs. Label, Hoover, and Wisdom all, in fact, relate back to the relevant period, it was error for the ALJ to reject them on the basis that they did not

apply.

Defendant also urges rejection of Hoover's opinion because it relies on Plaintiff's self-reports and does not cite medical evidence for support besides Hoover's extensive testing of Plaintiff. (Doc. 14 at 18.) But the ALJ did not rely on this rationale to reject Hoover's opinion. The Court is thus precluded from doing so after-the-fact.

The ALJ's final reason for rejecting Wisdom's opinion—that Plaintiff over-endorsed symptoms on a test—is also unsupported by substantial evidence. Wisdom found Plaintiff's "MMPI could not be interpreted due to elevations observed across multiple validity indicators . . . indicating significant symptom over-endorsement."[2] (Doc. 11-19 at 2189.) Similarly, Wisdom found Plaintiff had issues with the "MINI" test, but "it became apparent that he did not fully understand the item content despite multilple (sic) attempts to explain their meaning." (*Id*.) These two tests, however, relate to personality and emotional functioning. It is not apparent that they impair the validity of the rest of Wisdom's findings. Dr. Wisdom performed several other tests concerning Plaintiff's *cognitive*—rather than psychological—impairments. (*Id*. 2184–90.) Significantly, Wisdom found that Plaintiff was not malingering on those cognitive tests and determined that Plaintiff demonstrated significant impairment across all tested cognitive domains. (*Id*. at 2187–89.) The ALJ's reliance on the indicators of over-endorsement in these two tests does not justify rejecting Wisdom's entire opinion, especially when Wisdom's testing controlled for malingering and Wisdom provided an alternative explanation which the ALJ does not address. Finally, contrary to Defendant's arguments, the erroneous rejection of these medical opinions was not harmless. (Doc. 14 at 19.) Several examiners opined to severe impairments and limitations that, if properly evaluated and credited, cannot be said to have an "inconsequential" effect on the outcome of Plaintiff's case. *See Stout v. Comm'r, Soc.*

---

[2] Dr. Hoover found that Plaintiff likely over-endorsed symptoms on the same test when administered by Hoover, however the ALJ did not rely on this as a basis for rejecting Hoover's opinion. (Doc. 11-18 at 2017.) Hoover concluded that the over-endorsement may have been "a plea for help," or "that he may have responded to items differently on the first half of the test than he responded to these similar items during the latter half of the test [because of] testing fatigue," since Hoover's testing of Plaintiff lasted nearly seven hours. (*Id*. at 2011, 2017.)

- 7 -

*Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Because the ALJ erred in rejecting several critical and relevant medical opinions, substantial evidence does not support the ALJ's nondisability determination.

### B. Challenge to the ALJ's appointment is waived

"'[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Lucia v. SEC,* 138 S. Ct. 2044, 2055 (2018) (quoting *Ryder v. United States*, 515 U.S. 177, 182 (1995)). The circuits have reached different conclusions about whether a plaintiff waives an appointments clause challenge by not raising it at the administrative level. *Compare Carr v. Comm'r*, 961 F.3d 1267 (10th Cir. 2020), *with Cirko v. Comm'r*, 948 F.3d 148 (3d Cir. 2020). Although the Ninth Circuit has not ruled on whether a social security claimant must exhaust an appointments clause challenge before the ALJ, the Circuit has found that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (clarifying that *Meanel* "remains binding on this court with respect to proceedings before an ALJ" despite the Supreme Court's holding in *Sims v. Apfel*, 530 U.S. 103 (2000)). Applying Ninth Circuit case law, most district courts within the Ninth Circuit have found that social security claimants must exhaust issues before the ALJ. *See, e.g.*, *Shannon W. v. Comm'r*, No. 3:19-CV-6143-DWC, 2020 WL 5940073, at *7 (W.D. Wash. Oct. 7, 2020); *Montijo v. Comm'r*, No. CV-19-1088-PHX-ESW, 2020 WL 813771, at * 5 (D. Ariz. Feb. 19, 2020); *Samuel F. v. Berryhill*, No. CV 17-7068-JPR, 2018 WL 5984187, at *2 n.6 (C.D. Cal. Nov. 14, 2018). This Court joins in that conclusion. Therefore, the Court finds that in a social security case an appointments clause challenge is waived on appeal if it is not brought at the administrative level.

Here, it is undisputed that Plaintiff did not argue that the ALJ was unconstitutionally appointed during the administrative process. Accordingly, Plaintiff waived his appointments clause challenge.

**C.     The correct remedy is to remand this case for further proceedings.**

The credit-as-true rule, if applied here, would result in a remand of Plaintiff's case for a computation and payment of benefits. *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). It applies if each part of a three-part test is satisfied. *Id*. First, the ALJ must have failed to provide sufficient reasons for rejecting the claimant's testimony or medical opinions. *Id*. Next, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Further administrative proceedings serve a useful purpose when there are outstanding conflicts or ambiguities in the evidence that require resolution. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). Finally, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled. *Garrison*, 759 F.3d at 1020. Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.*

The credit-as-true rule does not apply here because there are significant factual conflicts that require resolution. While Plaintiff may have significant cognitive impairments and limitations, the record is unclear if and when they rose to a disabling level during the relevant period. A State-agency-reviewer concurred that Hoover's examination establishes disability after Plaintiff's DLI (though the reviewer found it did not before the DLI). (Doc. 11-4 at 109) The question of any such disability, and its timing, is a question for the ALJ upon remand.

**IT IS THEREFORE ORDERED** reversing the December 6, 2018 decision of the Administrative Law Judge (Doc. 11-3 at 11–33), as upheld by the Appeals Council (Doc. 11-3 at 1–6).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration. On remand, the Commissioner will conduct any necessary further proceedings, offer the claimant the opportunity for a supplemental hearing, and issue a new decision with evidentiary support for the findings. The Appeals Council will instruct the

ALJ to reevaluate the medical opinion evidence in accordance with this Order. The Appeals Council will instruct the ALJ to take further action, as warranted, to complete the administrative record and resolve the above issues.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment in favor of Plaintiff, and against Defendant, reversing the final decision of the Commissioner.

Dated this 2nd day of December, 2020.

_G. Murray Snow_
Chief United States District Judge

- 10 -